**Willie JEMISON, Petitioner,**

v.

**Dale FOLTZ, Respondent.**

**No. 86–CV–75162–DT.**

United States District Court,
E.D. Michigan, S.D.

Nov. 10, 1987.

Craig A. Daly, Detroit, Mich., for petitioner.

Frank J. Kelley, Atty. Gen. by Edgar L. Church, Jr., Asst. Atty. Gen., Corrections Div., Lansing, Mich., for respondent.

## OPINION

GILMORE, District Judge.

This petition for a writ of habeas corpus under 28 U.S.C. § 2254 raises the question of whether petitioner was denied his constitutional right under the Sixth Amendment to effective assistance of counsel.[1] The Court finds that the shocking action and inaction of defense counsel in this case clearly constitutes ineffective assistance of counsel under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

### I

In October 1978, petitioner was convicted in separate bench trials in the City of Detroit Recorder's Court[2] on two separate charges of delivery of heroin. The first trial involved delivery of heroin under 50 grams, and the second involved delivery of heroin over 50 grams but less than 225 grams. Petitioner was represented by Leroy Daggs, a member of the State Bar of Michigan, in both cases. Petitioner was sentenced to two concurrent prison terms of 13 to 20 years each.[3] After exhaustion of his state court remedies, petitioner filed the instant habeas application, raising two claims: 1) there was insufficient evidence to convict him of delivery of heroin, and 2) he was denied effective assistance of counsel.

The Court will address only petitioner's claim of ineffective assistance of counsel, finding no merit to petitioner's constitutional challenge to the sufficiency of evidence.

### II

On September 11, 1978, petitioner was arrested and charged with delivery of heroin. Retained counsel, Leroy Daggs, waived preliminary examination and filed no pretrial motions on behalf of petitioner. One month later, trial commenced in the Detroit Recorder's Court.

The state trial judge, who supervised petitioner's probation, was fully aware that petitioner had been convicted of assault with intent to rob being armed in 1961; aggravated assault in 1962; murder in the second degree in 1966; carrying a concealed weapon in 1974; and for carrying a concealed Weapon in 1978.[4]

Although defense counsel was aware of the trial judge's familiarity with petitioner's criminal history, which the trial judge normally would not know about,[5] he ad-

---

1. Petitioner has adequately exhausted his state court remedies, and the matter is properly before this Court.

2. The City of Detroit Recorder's Court is the felony court for the City of Detroit, and tries all felony cases arising within the city.

3. As pointed out in footnote 1, petitioner had fully exhausted his state remedies. On January 19, 1981, the Michigan Court of Appeals denied petitioner's delayed application for leave to appeal both convictions without prejudice, thus allowing petitioner to raise claims of ineffective assistance of counsel in a motion for new trial. On March 2, 1984, the state trial court, after holding an evidentiary hearing, denied petitioner's motion for a new trial in both cases. Subsequent appeals to the Michigan Court of Appeals and Michigan Supreme Court resulted in an affirmance of the first conviction, the case before this Court, and a reversal of the second conviction for ineffective assistance of counsel.

On July 26, 1986, the Michigan Supreme Court denied leave to appeal.

4. Note that under Michigan Rules of Evidence 609, in effect at the time of the trial in 1978, the 1961, 1962 and 1966 convictions could not have been used for impeachment purposes because they were more than ten years old. Therefore, they could not have been presented to a jury, or a judge who was unfamiliar with defendant's background. Further, a serious question exists as to whether the two convictions for carrying a concealed weapon could be used for impeachment purposes, if the defendant took the stand. Certainly, if defendant did not take the stand, none of the convictions would come to the attention of the fact-finder. For a recent discussion of counsel's obligations with reference to the use of a prior criminal record for impeachment see *Blackburn v. Foltz,* 828 F.2d 1177 (6th Cir.1987).

5. *See supra* note 4.

vised petitioner to waive his right to a jury trial, and the case was tried to the bench. The state trial judge did not suggest recusal, in spite of his knowledge of defendent's past criminal record.

At trial, after the prosecutor made an opening statement, defendant's counsel waived opening statement on behalf of petitioner. The prosecution then presented its sole witness, Detroit Police Officer JoAnna Graves, who testified as follows: On September 5, 1978, at about 7:00 p.m., she went to a residence in Detroit to make a previously arranged heroin buy with prerecorded Secret Service funds from a person named Sharon. Petitioner answered the door instead of Sharon and told the officer that Sharon was not there. Officer Graves indicated she was there to buy heroin. Petitioner led her to the dining room where she waited while petitioner went into the bedroom. Because the bedroom door was slightly ajar, she could see petitioner at the dresser measuring an off-brown powder onto a scale. After putting the powder into a plastic bag, he presented it to her in the dining room. She paid him for it, discussed the quality of the heroin, and then left. Officer Graves then delivered the suspected heroin to the Narcotics Section of the Detroit Police Department, placing it in a lock-seal folder. Petitioner was not arrested at that time because further investigation was planned. He was arrested six days later on September 11, 1978.

The prosecution at trial offered about eight other witnesses who had participated in the surveillance and had conveyed the powder for chemical analysis, which revealed that it was 24.7 grams of diacetylmorphine. Based on a conference with petitioner, however, defense counsel waived those witnesses and stipulated to the chain of evidence and that the exhibit was heroin.

Mr. Daggs' cross-examination of Officer Graves was not helpful. He elicited that at no time was the officer searched before she went into the house, nor after she left the house, to ascertain whether she had any other funds or any other substances on her person. Also on cross-examination Officer Graves testified she had noticed two children and a female in the back bedroom while she was waiting for petitioner to bring the heroin.

At that point, the prosecution rested, as did Mr. Daggs on behalf of petitioner. The prosecution made a brief closing statement. Mr. Daggs waived closing argument. The trial, which lasted 30 minutes, ended with the state trial judge ruling:

> [O]n September 5, 1978, at 12010 Burwood Street, in the City of Detroit, the defendant Willie M. Jemison did unlawfully deliver heroin to JoAnna Graves in the amount of 24.7 grams, contrary to law, and such delivery was done knowingly, and knowing the nature of the substance. I will find Mr. Jemison guilty of delivery of heroin in the amount under 50 grams.

On October 10, 1978, the trial judge sentenced petitioner to 13 to 20 years to run concurrently with another 13 to 20 years sentence imposed that day for the other narcotics conviction.[6] At the same time, the judge imposed sentences in two other cases involving petitioner, one for probation violation, the other for carrying a concealed weapon.

### III

In 1984, the state trial judge, after an evidentiary hearing, denied petitioner's motion for new trial,[7] rejecting petitioner's claim of ineffective assistance of counsel. Over a period of four days, the trial judge heard testimony from three witnesses in connection with petitioner's claim of ineffective assistance of counsel. The first witness was Ms. Willie Diane Rogers, who petitioner claims was an alibi witness who Mr. Daggs failed to investigate or present for trial on his behalf. The other two witnesses were petitioner and defense counsel Leroy Daggs. The trial judge con-

---

**6.** This latter conviction was overturned by the Michigan Court of Appeals for ineffective assistance of counsel. *See supra* note 3.

**7.** This is the proper post-conviction proceeding in the Michigan courts.

cluded the proceeding with the following ruling:

> Reviewing the entire conduct, the arguments seem to be that Mr. Daggs did not properly represent Mr. Jemison in accordance with the usual standards of the community or the profession at that time, and that the introduction of Ms. Rogers' testimony would have changed the outcome of trial, and Mr. Daggs was negligent in not producing her.
>
> The transcript is probably the best as to what she testified. She was not sure. She was not even sure whether it was a white woman or a black woman that came in looking for the other woman. So she wasn't sure of the date. She wasn't sure of the transaction. She heard nothing about narcotics. She was in another room with the children.
>
> So, I don't think her testimony would have added anything.
>
> There is some indication in some of Mr. Jemison's prior pleadings that Mr. Daggs had talked to her, although she denied that she had.
>
> I find Mr. Daggs' conduct throughout all of the trial proceedings were in the best interest of his client.
>
> There was some difference between [counsel for petitioner in his post-conviction proceedings] and Mr. Daggs over what trial strategy would be.
>
> But Mr. Daggs was competent, up to the usual standards. He did get a not guilty verdict on Count 2 [in the other narcotics case], which would have carried a mandatory 20 year minimum.
>
> I will deny the motion for new trial. The reporter will have the transcript prepared within the time limits and sent to the Court of Appeals. I will enter the order later today.

The State Court of Appeals affirmed denial of the new trial motion in the conviction that is the subject of the instant petition, and the State Supreme Court ultimately denied leave to appeal.[8]

## IV

■ This Court recognizes that the underlying facts as found by a state court are governed by a statutory presumption of correctness under 28 U.S.C. § 2254(d), *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981), and *Sumner v. Mata II,* 455 U.S. 591, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982). This Court is bound to defer to the state court's finding of fact, if they are properly formulated. However, two problems exist: 1) the inadequacy of the findings of the state trial judge, and 2) the fact that a determination of ineffective assistance of counsel is a mixed question of fact and law. Under *Fowler v. Jago,* 683 F.2d 983 (6th Cir.1982), *cert. denied,* 460 U.S. 1098, 103 S.Ct. 1798, 76 L.Ed.2d 363 (1983), if a federal district court finds a state court's findings inadequate to ascertain whether they are supported by evidence and whether correct legal standards were applied, then the federal court is obligated to conduct an evidentiary hearing, and make independent findings:

> Federal courts have an obligation to ascertain whether the state court found the relevant facts and applied the correct standard of law....
>
> Thus, this court must examine the findings of the state judge to determine if they are adequate to support the presumption of correctness under § 2254(d). These findings must be sufficient to enable the district court to fulfill its obligation to determine that they are supported by the evidence and that the correct standards of law were applied. The federal district court may dismiss the petition without a hearing only if the findings of the state judge are sufficient to enable the federal district judge to determine that they are supported by the evidence, and that the correct standards of law were applied.

*Id.* 988–89.

In directing the district court to hold an evidentiary hearing on the habeas petition in *Fowler,* the court explained:

> This court cannot determine the basis for the state trial judge's decision, and,

---

8.  *See supra* note 3.

we, therefore, cannot assume that the state trial judge did not reach an erroneous decision. The district court cannot infer findings and assume the proper standard was applied because the findings cannot be reconstructed from an examination of the record. Where findings cannot be inferred, and where there has been no articulation of the standards used by the state trier of fact, the district court must hold its own hearing. *Id.* 991–92.

Moreover, the § 2254(d) presumption of correctness is not wholly applicable where the issue is a mixed question of law and fact. *Fowler, supra.* In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court made clear that the question of ineffective assistance of counsel is a mixed question of law and fact. Not only is the ultimate finding of the constitutional adequacy of counsel's assistance a legal conclusion, but also "both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact." 466 U.S. at 698, 104 S.Ct. at 2070. *See also Adams v. Jago*, 703 F.2d 978 (6th Cir.1983).

■ This Court found the ruling of the state trial judge of little or no aid in determining the issue of effective assistance of counsel. Because the trial court failed to make proper findings, and because the issue of effective assistance of counsel is a mixed question of fact and law, this Court ordered an evidentiary hearing.

## V

Testifying at the hearing before this Court were the same three people who testified before the state trial judge: Ms. Willie Rogers, the petitioner, and Mr. Daggs.

Ms. Rogers testified that on September 5, 1978 she was at petitioner's house, in the bedroom along with petitioner's two small children, at the time Officer Graves came to the door. She testified that she did not see Officer Graves and petitioner, but she could hear their conversation in the dining room because the bedroom door was open. She testified that Officer Graves asked for "Sharon," and, when told Sharon was not there, asked if she could use the bathroom. After she came out of the bathroom she again inquired about Sharon, and petitioner repeated that Sharon was not there. Ms. Rogers testified that she heard no discussion of drugs or money, nor any conversation about the quality of heroin. She insisted she heard nothing to indicate a drug transaction occurred between petitioner and Officer Graves.

Ms. Rogers further testified that, after his arrest, petitioner asked her to call Mr. Daggs and to offer herself as a witness. She said she called Mr. Daggs twice, but never received a return phone call from him. She testified that Mr. Daggs at no time ever communicated with her or interviewed her with a view to calling her as a witness at trial.

Ms. Rogers was a highly credible witness who had no criminal record, and who is employed by the State of Michigan in the Department of State Automobile License Bureau. She would have been a valuable witness at trial.

Taking the witness stand, petitioner testified he never sold any heroin to Officer Graves. He stated that, when Mr. Daggs visited him at the jail, he asked counsel to talk to Ms. Rogers, and call her as a witness. On the day of trial, he asked counsel why Ms. Roger was not present. Petitioner testified that Mr. Daggs said: "Don't worry about it. I will handle it."

Petitioner denied that he consented to waiving a jury. He said that Mr. Daggs made all of the decisions in the case, and told petitioner not to worry about waiving the preliminary examination or the right to a jury trial. Petitioner also testified that he had wanted to testify at trial, but defense counsel dissuaded him on grounds that he could then be impeached with his prior criminal record.

Petitioner complained that defense counsel made no motions for discovery, to suppress his prior record, to suppress the heroin, or to disqualify the trial judge.

Leroy Daggs, petitioner's defense counsel, was the final witness. He says he met

with the defendant four times before trial and advised him to waive jury trial. He admitted he never tried to reach Ms. Rogers because he understood from petitioner there was a hand-to-hand sale. Also, because Ms. Rogers could not see petitioner and the female, Mr. Daggs felt she would be an ineffective witness.

Mr. Daggs was unable to explain adequately why he waived jury trial and did not make an opening and closing statement. He said his concern was that, if petitioner demanded a jury trial, the trial judge would impose a harsher sentence.[9] Mr. Daggs testified he saw no reason for making a closing argument because the trial was very short, there was only one witness, and he did not want to irritate the judge.

Petitioner claims that Mr. Daggs' representation was ineffective because he waived jury trial, he failed to investigate and present Ms. Rogers as a defense witness, he failed to make pretrial motions to suppress petitioner's prior record, he waived opening and closing arguments, he stipulated to the prosecutor's evidence, and he failed to make objections. Petitioner maintains defense counsel's conduct amounted to a tacit admission of guilt, and an unconstitutional waiver of petitioner's right to trial.

## VI

In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court established a two-part test for determining ineffective assistance of counsel. First, defendant must show that counsel's performance was deficient and "fell below an objective standard of reasonableness." *Id.* at 687–88, 104 S.Ct. at 2064. The difference between effective and deficient performance is elusive, and will depend largely on the facts of the case at hand. However, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* The court must resist second-guessing and strive "to eliminate the distorting effects of hindsight." *Id.*

Courts must remember that there are "countless ways to provide effective assistance." Thus, what might constitute ineffective assistance in one case might qualify as good trial strategy in another case, even if the strategy fails. *Id.* at 689, 104 S.Ct. at 2065.

Second, defendant must show that counsel's deficient performance prejudiced the defense. *Id.* at 691–92, 104 S.Ct. at 2066–67. To satisfy this prong of the test, a defendant must show a reasonable probability that, but for counsel's errors, the outcome would have differed. Defendant's burden is to demonstrate "a probability sufficient to undermine confidence in the outcome"; he need not prove prejudice by a preponderance of the evidence. *Id.* at 694, 104 S.Ct. at 2068. The prejudice prong is designed to give meaning to the constitutional guarantee of right to counsel, that is "to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding." *Id.* at 691–92, 104 S.Ct. at 2067.

The Supreme Court has made clear that a challenge of ineffective assistance requires the court to focus on the fundamental fairness of the proceeding being challenged. The court must ask "whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." *Id.* at 696, 104 S.Ct. at 2069.

This Court finds defense counsel's handling of this case shocking, and concludes petitioner was clearly deprived of effective assistance of counsel. Defense counsel had a duty to consult with defendant on important decisions, and to bring to bear on the case such skill and knowledge as to make the trial a reliable adversary proceeding.

█ Nothing that even approximates those standards was done in this case. The preliminary examination was waived. No motions were filed. Counsel made neither

---

**9.** There is some irony here since the trial judge gave petitioner the maximum sentence that could be imposed on the charge on which he was convicted.

an opening statement nor a closing argument on petitioner's behalf. A potentially effective alibi witness was not interviewed, even though she had called Mr. Daggs' office twice to advise him of her availability, and petitioner had advised Mr. Daggs of the importance of the witness. Jury trial was waived, allowing the defendant to be tried before a judge who was fully aware of petitioner's long criminal record. However, petitioner's record would not have been admissible under any circumstances, if defendant had not taken the stand, and to a large extent it would have been inadmissible for impeachment purposes under Michigan Rules of Evidence 609.[10] There is no explanation for defense counsel's failure to move either to disqualify the trial judge or to demand a jury trial, and then move to suppress prior convictions in the event defendant took the witness stand. Defense counsel's cross-examination of the state's only witness was highly limited, and ineffectual.[11] Taken together, all of the conduct described above amounts to conduct that falls below an objective standard of reasonableness.

The Sixth Circuit in *Beasley v. United States*, 491 F.2d 687 (1974), anticipated the Supreme Court's opinion in *Strickland*. The *Beasley* court held:

> [t]hat the assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance.... Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations. Defense counsel must investigate all apparently substantial defenses available to the defendant and must assert them in a proper and timely manner.

*Id.* at 696.

Heeding *Strickland's* requirement of deferential scrutiny, this Court cannot but conclude that defense counsel's representation was ineffective and failed to provide petitioner with any kind of defense.

The record in this case also compels the conclusion that counsel's deficient performance prejudiced petitioner's defense. Viewing the trial as a whole, this Court cannot conclude that it was fundamentally fair. Overall, this Court must be convinced that the verdict is not "unreliable because of a breakdown in the adversarial process." *Strickland, supra.* In the instant case, the extent of defense counsel's assistance was to briefly cross-examine the state's only witness.

The transcript reveals a proceeding that this Court cannot recognize as a "trial" in the sense of pitting adversaries against one another. Instead, petitioner's "trial" functioned as a plea of guilty. However, petitioner had elected his constitutional right not to plead guilty, and put the state to their proofs beyond a reasonable doubt. While the facts in this case are less egregious, it is not unlike the case of *Wiley v. Sowders*, 647 F.2d 642 (6th Cir.) *cert. denied*, 454 U.S. 1091, 102 S.Ct. 656, 70 L.Ed. 2d 630 (1981), where the court granted the writ finding ineffective assistance of counsel where defense counsel, as part of his "strategy" in defending his client on the persistent felony stage of trial, after the jury had convicted his client on the predicate offenses, referred to his client's "guilt." The *Wiley* court noted:

> The decision to plead "guilty" or "not guilty" is a decision reserved solely for the accused based on his intelligent and voluntary choice....
>
> ....
>
> A plea of "not guilty" has at least two dimensions recognizable by this court. First, in pleading "not guilty" a defendant reserves in toto those constitutional rights fundamental to a fair trial. Included in this category of constitutional rights is the accused's right to trial by

---

**10.** *See supra* note 4.

**11.** Defense counsel elicited on cross-examination that the officer was not searched before she went into the petitioner's house, nor after she left petitioner's house. However, by waiving opening and closing arguments, defense counsel forfeited any chance to underscore this testimony and perhaps give rise to a reasonable doubt concerning petitioner's involvement.

jury, his privilege against self-incrimination, and his right to confront his accusers. Second, in pleading "not guilty," a defendant exercises his right to make a statement in open court that he intends to hold the government to strict proof beyond a reasonable doubt as to the offense charged.

. . . .

Unquestionably, the constitutional right of a criminal defendant to plead "not guilty," or perhaps more accurately not to plead guilty, entails the obligation of his attorney to structure the trial of the case around his client's plea.

. . . .

A criminal defendant has a constitutional right to expect during trial that his attorney will, at all times, support him, never desert him, and will perform with reasonable competence and diligence.

*Id.* at 648–51 (citations omitted).

Petitioner received almost no assistance from Mr. Daggs. The defense was merely perfunctory, making for a nonadversarial trial. Petitioner had counsel in name only, but not in fact. A reasonable probability exists that the outcome of the trial would have differed but for counsel's errors, detailed above, which deprived petitioner of "the adversarial process that our system counts on to produce just results." *Strickland, supra,* 466 U.S. at 696, 104 S.Ct. at 2069.

Petitioner was denied effective assistance of counsel and a fundamentally fair trial. Under the standards of *Strickland,* he is entitled to a writ of habeas corpus.

The writ of habeas corpus will be granted and defendant will be released from custody, unless the state retries him within 120 days of the entry of this opinion.