**Lorenzo MATTHEWS, Petitioner,**

**v.**

**Joseph ABRAMAJTYS, Respondent.**

**Civil Action No. 98–CV–73319–DT.**

United States District Court,
E.D. Michigan,
Southern Division.

April 11, 2000.

James S. Lawrence, Detroit, MI, for Petitioner.

Laura G. Moody, Michigan Dept. of Attorney General, Habeas Corpus Div., Lansing, MI, for Respondent.

## *OPINION AND ORDER GRANTING PETITION FOR A WRIT OF HABEAS CORPUS*

TARNOW, District Judge.

I. Introduction .......... 620
II. Facts .......... 621
III. Procedural History .......... 623
IV. Discussion .......... 626
A. Standard of Review .......... 626
B. Exhaustion .......... 627
C. Procedural Default .......... 628
D. Laches .......... 630
E. Insufficiency of Evidence .......... 632
F. Ineffective Assistance of Trial Counsel .......... 634
1. Deficient Performance .......... 635
a. Failure to Cross–Examine Child Witnesses .......... 635
b. Waiver of Deon Corbett as a Witness .......... 636
c. Failure to Present Alibi Witnesses .......... 637
2. Prejudice .......... 638
G. Admission of Other Crimes Evidence .......... 640
H. Prosecutorial Misconduct .......... 641
I. Ineffective Assistance of Appellate Counsel .......... 642
V. Conclusion .......... 643

### I. *Introduction* [1]

Petitioner Lorenzo Matthews ("Petitioner"), a state prisoner currently confined at the Ionia Maximum Facility in Ionia, Michigan,[2] has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 alleging that he is incarcerated in

1. Staff Attorney Cheryl Takacs Bell provided quality research assistance.

2. At the time the habeas petition was initially filed, Petitioner was confined at the Brooks Correctional Facility in Muskegon Heights, Michigan. Respondent Joseph Abramajtys is the warden at that facility.

violation of his constitutional rights. Petitioner was convicted of three counts of first degree murder and one count of felony firearm following a bench trial in the Recorder's Court for the City of Detroit in July of 1986. He was sentenced to three terms of life imprisonment and a consecutive term of two years imprisonment on September 4, 1986. *People v. Lorenzo Matthews,* Recorder's Ct. No. 86–01765.

Mr. Matthews claims that he is entitled to habeas relief based upon claims of insufficiency of the evidence, ineffective assistance of trial and appellate counsel, admission of other crimes evidence, and prosecutorial misconduct. Mr. Matthews has maintained his innocence. This Court finds that there was insufficient evidence to support Mr. Matthews conviction. Further, he was denied the effective assistance of trial and appellate counsel, and that admission of his mug shot violated due process. Therefore, the petition for a writ of habeas corpus is **GRANTED.**

## II. *Facts*

Petitioner's convictions arise from the robbery and shooting deaths of Bruce Baxter, his wife Marilyn Baxter, and their next door neighbor Robert Williams on the morning of December 12, 1985 at the Baxters' residence at 9627 Westwood in Detroit, Michigan.

Several police officers testified at trial regarding the circumstances of the crime and their investigation of the crime scene. Responding to 911 calls, police officers found the Baxters in the basement of their home and found Mr. Williams outside the home near his still-running car around 8:35 a.m. Although there was no evidence of a break-in, the Baxters' home had been ransacked, Mr. Baxter's pockets were empty, Mrs. Baxter's purse was empty, and several jewelry items were missing from the home. All three victims died of multiple gunshot wounds. There was no dispute the elements of felony murder were established. The only dispute was whether or not Mr. Matthews was one of the three persons seen running from the scene. Police did not find fingerprints or other physical evidence on the scene linking him to the crime.

Off-duty police officer Gilbert McReynolds testified that, while at home on December 12, 1985, he observed Mr. Matthews walking alone on Orangelawn (one street east of Westwood) near Grandville in the direction of the Baxters' residence shortly after 8:00 a.m. Officer McReynolds heard gunshots approximately 20 minutes later, but could not tell where those shots originated. Officer McReynolds could not recall what Petitioner was wearing that morning, but a report that he completed shortly after the incident described Mr. Matthews as being six-feet three or four inches tall and wearing blue jeans and a dark jacket. McReynolds acknowledged that Petitioner lived in the neighborhood and that he had often seen him in the area.

Several children testified that, while walking to school on December 12, 1985, they saw three males running from the vicinity of the Baxters' residence. None of the children could identify those individuals. Michael Barmore, age 8, testified that he heard gunshots and saw three boys running on Minock Street (one block away from and parallel to Westwood) toward Plymouth. He stated that one of the boys wore a red jacket with a hood, one wore a red and blue Sixers jacket, and one wore an orange jacket; but he also stated that he did not see the third jacket. He did not see a gun.

Terrance Barmore, age 10, testified that he heard three gunshots and saw a man laying by a tree on Westwood, while another man leaned over him and then ran into a house. He saw three boys running down the street and dropped to the ground until they passed. He stated that one of the boys wore an orange and blue windbreaker and one wore a gray Georgetown jacket, but he did not see the third coat.

Emmanuel Jones, age 12, testified that he heard three gunshots while walking to school and saw three men running down Minock. He stated that two of the men wore red, blue, and yellow jackets and the

other man wore a blue and gray Georgetown jacket. He also saw one of the men carrying a handgun at his side while running.

Deangelo Williams, age 10, testified that he heard four gunshots and then saw three guys running from Orangelawn onto Minock. One of the men was carrying a small gun as he ran. He testified that one man wore a red Sixers jacket and one wore a gray and blue Georgetown jacket, but he did not see the third man's jacket. He thought one of the men was someone he had seen at Cody High School because of his height, but admitted that he did not see his face.

Jovan Willis, age 10, testified that he heard gunshots and saw three boys running from Orangelawn onto Minock toward Plymouth. One boy was carrying a handgun by his side. One of the boys wore a blue and orange jacket with a blue vest and blue hood, one wore a red Sixers jacket, and one wore a gray Georgetown jacket. He described the boys as being older than himself and explained that two were the size of men and one was like a teenager.

Leon Lewis, age 9, testified that he heard four gunshots while he was outside on Minock, but did not see anyone running down the street.

Defense counsel did not cross-examine any of the child witnesses. Defense counsel also agreed to waive the presentation of three additional child witnesses, including Deon Corbett.

Over defense objection, a mug shot of Petitioner wearing a blue Georgetown jacket with gray lettering was admitted into evidence. The photograph was taken in January, 1985, about 11 months prior to the incident at issue.

Marilyn Pryor, an adult living on Minock Street, testified that she saw three boys running down her street when she let her children out for school around 8:25 a.m. on December 12, 1985. She thought she recognized one of the men as Petitioner. Mrs. Pryor explained that she had seen Petitioner in the neighborhood and believed he went to Cody High School with her nieces. She stated that all three men had the same complexion and were about the same size, but she could not estimate their heights. Ms. Pryor admitted that she only had a side view of the men and merely glanced at them as they ran past. She could not positively identify Petitioner as one of those men.

Reverend James Ellison, Mr. Williams' next door neighbor, testified that he heard four gunshots on the morning of December 12, 1985. When he opened his front door and looked outside, he saw a man with a dark object in his left hand leaning over Mr. Williams on the ground. He yelled out to the man and told his wife to call the police. The man then ran away. Reverend Ellison went outside and discovered that Mr. Williams had been shot. Reverend Ellison testified that Petitioner was not the man he saw with Mr. Williams. Ronald Ramirez, another neighbor, observed the man confront and shoot Mr. Williams before running toward Minock, but did not identify the perpetrator.

Two jewelers also testified at Petitioner's trial. Bobby Berry, the owner of the Gold Express in Detroit, testified that Petitioner sold him a Mercedes Benz ring a week or so before the Christmas holiday in December, 1985. In exchange for the ring, Mr. Berry gave Petitioner $750 in cash and a large gold rope chain with a medallion. He estimated that the ring was worth $12,000 to $15,000. Krikor Oknayan, a manager at Kayanan Jeweler Corporation, testified that a jeweler in his store made the Mercedes Benz ring for Bruce Baxter approximately two years prior to the trial. He estimated the present value of the ring to be $12,000.

Jonathan Hudson, the Baxters' nephew, testified that he worked for the Baxters performing household chores and babysitting after school. Mr. Hudson testified that Petitioner had been at the Baxters' residence on several occasions and was there two days before the murders. Petitioner and Mr. Baxter spoke in the base-

ment for about one hour that evening, but Mr. Hudson did not participate in the conversation. Mr. Hudson also testified that he was at the Baxters' residence decorating for the Christmas holiday on December 11, 1985. He identified the Mercedes Benz ring as belonging to Mr. Baxter and explained that he (Mr. Hudson) occasionally wore the ring while working around the house. Mr. Hudson testified that he wore the ring, and other jewelry, while cleaning the house on December 11, 1985. He last saw the ring around 7:30 p.m. that evening and left the Baxters' residence at 11:30 p.m. When he left, the Baxters were alive and their home was neat. Mr. Hudson also testified that the Baxters had locks on their doors, as well as a monitoring system with a video camera in the front of the house. Mr. Hudson was unable to fit the Mercedes Benz ring on his ring finger at trial.

Rose Marie Marks, Mr. Matthews' girlfriend, testified that she took a .22 caliber handgun [3] from the home of Petitioner's sister sometime in December, 1985, but denied that he had asked her to hold the gun for him. Ms. Marks stated that Petitioner telephoned her from Illinois on December 14, 1985, and that she saw him in Detroit two to four days later. At that time, Petitioner showed her a Mercedes Benz ring, told her that he wanted to buy the ring, and asked her to return $700 that he had given her earlier in the month. She refused to give Petitioner the money and he left with the ring. When he returned, he had a gold rope chain. Ms. Marks did not know from whom Petitioner wanted to buy the ring. Ms. Marks acknowledged that Petitioner knew Bruce Baxter, and explained that Mr. Baxter picked Petitioner up on several occasions. Ms. Marks also testified that Petitioner was due to be sentenced on another matter on December 12, 1985, but wanted the proceeding adjourned so that he would be sentenced after the holidays.

At the conclusion of the prosecution's case, defense counsel moved for a directed verdict asserting that insufficient evidence was presented to convict Petitioner of first-degree murder. The trial court denied the motion. Defense counsel then proceeded to recall three prosecution witnesses, who essentially reiterated their prior testimony. Defense counsel did not call any new witnesses or present any evidence on Petitioner's behalf.

In its decision at the end of trial, the trial court recognized that the evidence against Petitioner was largely circumstantial, but nonetheless found him guilty of three counts of first-degree felony murder and one count of felony firearm. Petitioner was subsequently sentenced to three concurrent terms of life imprisonment without parole and a consecutive term of two years imprisonment.

## III. *Procedural History*

Following his convictions and sentencing, Petitioner filed an appeal as of right with the Michigan Court of Appeals, asserting the following claims:

I. The district court abused its discretion in binding him over for trial.

II. The trial court violated due process by admitting an old booking photograph of him concerning a prior, unrelated crime.

III. The trial court erred in denying the defense motion for a directed verdict.

IV. The trial court erred in finding him guilty beyond a reasonable doubt.

V. He was denied the effective assistance of counsel.

The Michigan Court of Appeals affirmed Petitioner's convictions and sentences in an unpublished, per curiam opinion. *People v. Lorenzo Matthews,* No. 95278 (Mich.

3. Evidence technicians recovered several bullet fragments and concluded that three guns, two .38 caliber and one .44 caliber, had been fired at the murder scene.

Ct.App. Feb. 19, 1988). Petitioner then filed an application for leave to appeal with the Michigan Supreme Court raising the same issues, which was denied in a standard order. *People v. Lorenzo Matthews,* 431 Mich. 876 (1988).

Petitioner subsequently filed a motion for relief from judgment with the trial court raising eight grounds for relief, including insufficient evidence and ineffective assistance of counsel. The trial court denied the motion pursuant to MCR 6.508(D)(2) and (3). *People v. Lorenzo Matthews,* No. 86–1765 (Recorder's Ct. Sept. 27, 1995). On March 13, 1996, Petitioner filed an application for leave to appeal the denial of the motion for relief from judgment with the Michigan Court of Appeals, which was dismissed as defective on August 21, 1996. On September 27, 1996, Petitioner filed another application for leave to appeal with the Michigan Court of Appeals, asserting:

I. He was deprived of a fair trial when the trial court reversibly erred by admitting evidence for identification purposes of alleged and uncharged prior bad acts, under the res gestae exception, where the acts were not related to the particular offense and were more prejudicial than probative.

II. He was deprived of a fair trial when the trial court reversibly erred in permitting the prosecution to elicit testimony from two police officers who claimed that they were familiar with the defendant prior to the instant charge.

III. He was denied due process when the trial court relied on insufficient evidence to establish his guilt beyond a reasonable doubt.

IV. He was deprived of a fair trial when the prosecutor failed to disclose and endorse a known res gestae witness whose testimony was crucial to the defense.

V. He was deprived of a fair trial when a known res gestae witness was waived during trial without his consent prior to knowing the nature of the witness's testimony as such constitutes newly-discovered evidence.

VI. He was deprived of a fair trial when defense counsel failed to perform as that of an attorney with ordinary training and skill in the criminal law.

VII. He was deprived of receiving a fair trial after the prosecutor abused his discretion during the course of trial.

The Court of Appeals denied the application for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D). *People v. Lorenzo Matthews,* No. 197980 (Mich.Ct.App. March 13, 1997). On April 8, 1997, Petitioner filed an application for leave to appeal with the Michigan Supreme Court, raising the same issues, which was similarly denied. *People v. Lorenzo Matthews,* 456 Mich. 916, 572 N.W.2d 660 (1997).

Petitioner thereafter submitted a *pro se* petition for a writ of habeas corpus to this Court, which was received on July 28, 1998 and filed on August 3, 1998. Represented by legal counsel, Petitioner filed an amended petition on December 7, 1998, asserting the following claims as grounds for relief:

I. He had ineffective assistance of trial counsel.

II. The evidence was insufficient to convict.

III. He was prejudiced by the improper introduction of other crimes evidence.

IV. He was deprived of a fair trial by improper prosecutor argument.

V. He had ineffective assistance of appellate counsel.

Respondent filed a motion to dismiss the petition asserting that it was filed outside the one-year statute of limitations period established by 28 U.S.C. § 2244(d)(1). The Court denied that motion, finding that the habeas petition was timely filed, and

ordered Respondent to submit an answer addressing the merits of the petition. *Matthews v. Abramajtys,* 39 F.Supp.2d 871, 874–75 (E.D.Mich.1999). Respondent filed an answer addressing the claims contained in Petitioner's original petition on July 27, 1999. Petitioner, through legal counsel, filed a reply to that answer on August 23, 1999. Respondent filed a supplemental answer addressing the claims contained in Petitioner's amended petition on September 7, 1999. Petitioner filed a reply to Respondent's supplemental answer on September 29, 1999.

An evidentiary hearing was held on February 25, 2000.[4]

Mr. Daggs was first asked by Petitioner's counsel why no questions were asked of Michael Barmore. Mr. Daggs said he couldn't recall. Michael Barmore gave a statement to the police which identified three boys running from the scene. In the statement he had stated that the boy wearing the Georgetown jacket was shorter than the boy carrying a handgun, whom he stated was about 5'8". Mr. Matthews was/is 6'5". When asked why Sandra Elliot or Deon Corbett were not called as witnesses, Mr. Daggs replied that he couldn't recall.

Mr. Daggs acknowledged "height was very important". He concluded since it was important, "I am sure I did" discuss the height issue with Mr. Matthews.

The Assistant Attorney General argued that since Mr. Daggs had mentioned this to the trial judge during his closing argument, there was no error. The Assistant Attorney General admitted that no evidence supporting counsel's argument was set forth by testimony or rebuttal.

The Assistant Attorney General then asked about counsel's usual practices.[5] She asked Mr Daggs that if he had an alibi witness, or witnesses, would he have presented them, if credible? Or, if any other matter was important would he have presented it? Counsel answered in the affirmative.

This Court asked Mr. Daggs how he prepared for this evidentiary hearing. Mr. Daggs acknowledged to the Court that he had received the trial transcript ten to twelve days prior, but had not taken the opportunity to read the material.

Petitioner's next witness was his sister, Monica Wimbush. She testified that she remembers Mr. Matthews leaving the residence, where they both stayed with their mother, a little after 8:00 the morning of the murders. Ms. Wimbush remembered because her brother had a court appearance that day and she and her mother insisted that he had to take his pit bull dog somewhere else. She was assured by Mr. Daggs after he interviewed her prior to the trial that he would be calling her at trial as an alibi witness. She was never called as a witness. Counsel did not tell her why.

Petitioner's next witness was Maggie Matthews, Mr. Matthews' mother. Mrs. Matthews testified that, because she was afraid of her son's dog, she remembers telling him that he must take the dog to his brother's house. She remembers him leaving that morning at 8:05–8:10 a.m. because she was getting ready to go to work

4. The hearing was scheduled to begin at 10:00 a.m. but was delayed until 11:30 a.m. due to the late arrival of Petitioner's first witness, his trial counsel, Mr. Daggs. Mr Daggs did not offer any explanation; he only stated that he was being inconvenienced and had to be elsewhere within an hour and a half.

5. Given the Assistant Attorney General's question of past practices, the following is relevant: This Court can also take notice of three published Opinions finding Mr Daggs ineffective or inattentive to his client(s). *Jemison v. Foltz,* 672 F.Supp. 1002 (ED Mich.1987, Gilmore), Judge Gilmore chastised Mr Daggs and granted Petitioner's Writ for Habeas Relief based on Mr Daggs' failure to present any kind of defense. In *State Bar of Michigan v. Daggs,* 384 Mich. 729, 187 N.W.2d 227 (1971) and *In re: Daggs,* 411 Mich. 304, 307 N.W.2d 66 (1981), Mr Daggs was suspended for three months, for not diligently pursuing the case of a client after taking a retainer, and for one year for being grossly negligent in the handling of three clients, respectively.

at the time. She also spoke to attorney Daggs, who told her that he would be calling her at the trial. As the trial progressed, she asked when she would be called. She was told by attorney Daggs that she wasn't needed, because her testimony would only prolong the trial.

Petitioner's next witness was Sandra Elliot, who was married to Victor Coles, Lorenzo's brother. She lived at 11319 Auburn, one half mile from where Mr. Matthews, Mrs. Matthews and Ms. Wimbush resided. She remembers Mr. Matthews arriving at 8:30 a.m. that morning and staying for about a ½ hour. She also told this to Mr. Daggs, but was never called at trial.

Mr. Lorenzo Matthews testified that he is 6'5½" tall. At the time of his conviction he had only a sixth grade education and was 22 years of age. He stated that he had met with Mr. Daggs three to four times prior to the trial. He testified that Mr. Daggs did give him the police reports, but that he could not understand them, because he could not read. It wasn't until Mr. Matthews learned to read in 1992 that he discovered Michael Barmore's statement that the man seen running in the Georgetown jacket was shorter than 5'8".

Petitioner said that he had told Mr. Daggs that he had an alibi for the time period. He told Mr. Daggs to speak to his mother, his sister and his sister-in-law. On the last day of trial, he asked Mr. Daggs why none of those alibi witnesses were called to testify. Mr. Daggs had told him there was no need for any witnesses to be called in his case, because "no one had identified me as being at the scene."

Further, Mr. Matthews told Mr. Daggs of a potential perpetrator of the killings. Mr. Baxter, one of the murder victims, had ordered a beating of, and taking of money from, "Charles", known as "CC", just a few days prior to his demise. Mr. Matthews told Mr. Daggs that he wanted Mr. Daggs to call Keith Faison. Mr. Faison was a friend of Mr. Baxter. Petitioner stated that he had been told by Mr. Faison that the murders were in retaliation for arranging the beating and robbery. This avenue was never explored.

Another witness, Deon Corbett, who was shown photos of Petitioner and stated that Mr. Matthews was not one of the people running from the scene was dismissed by Mr. Daggs as a potential witness.

Petitioner also explained that he was given the ring to wear by Mr. Baxter a few days prior to the murders because he was planning on purchasing it. Mr. Baxter and Mr. Matthews were associates prior to this incident.

The Court then asked Mr. Matthews why he waived a jury trial. Mr. Matthews explained that he was told by Mr. Daggs that "there was no way a judge could find me guilty of a murder without any witness, fingerprints or anybody ever saying that they ever seen me on the street of the crime."

This Court then asked Petitioner if he had maintained his innocence then and is he now. He answered affirmatively.

## IV. *Discussion*

### A. *Standard of Review*

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 (April 24, 1996), govern this case because Petitioner filed his habeas petition after the effective date of the AEDPA. *See Lindh v. Murphy,* 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

The United States Court of Appeals for the Sixth Circuit recently discussed the deference to be accorded a state court's decision on habeas review in considering whether that decision "involved an unreasonable application of" clearly established federal law:

> The deference to the state courts' judgments required by the AEDPA is achieved by adopting the rule that the unreasonableness of a state court's application of clearly established Supreme Court precedent will not be debatable among reasonable jurists if it is so offensive to existing precedent, so devoid of record support, or so arbitrary as to indicate that it is outside the universe of plausible, credible outcomes.

*Nevers v. Killinger,* 169 F.3d 352, 362 (6th Cir.1999), *cert. denied* 527 U.S. 1004, 119 S.Ct. 2340, 144 L.Ed.2d 237 (1999) (internal citations omitted); *see also Tucker v. Prelesnik,* 181 F.3d 747, 753 (6th Cir.1999) (discussing *Nevers* and concluding that "the writ will issue if the unreasonableness of the state court's application of clearly established precedent is not debatable among reasonable jurists. The unreasonableness of the application will not be debatable if it is so offensive to the precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible outcomes.").

Additionally, § 2254(e)(1) requires that this Court presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith,* 161 F.3d 358, 360–61 (6th Cir.1998), *cert. denied* — U.S. —, 119 S.Ct. 2403, 144 L.Ed.2d 802 (1999).

**B. *Exhaustion***

Respondent contends that Petitioner's habeas petition should be dismissed as a "mixed petition" because it contains two factual assertions concerning the alleged ineffective assistance of counsel which were not raised in the state court proceedings. Specifically, Respondent asserts that Petitioner never raised counsel's failure to cross-examine Michael Barmore about his pre-trial description of the height of the person wearing the Georgetown jacket and never raised counsel's failure to introduce that Petitioner did not attend Cody High School with Marilyn Pryor's niece.

A prisoner filing a petition for writ of habeas corpus under 28 U.S.C. § 2254 must first exhaust all state remedies. 28 U.S.C. § 2254(b), (c); *O'Sullivan v. Boerckel,* 526 U.S. 838, 119 S.Ct. 1728, 1731, 144 L.Ed.2d 1 (1999); *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir.1994). Exhaustion requires that a prisoner "fairly present" the substance of each federal constitutional claim to the state courts using citations to the United States Constitution, federal decisions using constitutional analysis, or state decisions employing constitutional analysis in similar fact patterns. *Levine v. Torvik,* 986 F.2d 1506, 1516 (6th Cir.1993). " 'The factual and theoretical substance of a claim must be presented to state courts to render it exhausted for federal habeas corpus purposes.' " *Manning v. Alexander,* 912 F.2d 878, 881 (6th Cir.1990) (citations omitted); *Kilby v. Jones,* 809 F.2d 324, 325 (6th Cir.1987). The burden is on the petitioner to prove exhaustion. *Rust,* 17 F.3d at 160.

Further, Respondent raised actual innocence not excusing non-exhaustion. However, the issues remaining were actually exhausted. The Court does not have to address whether or not actual innocence is grounds for an exception to the exhaustion requirement. Certainly, the history, purpose and spirit of the habeas corpus provision in the constitution is consistent with

the ideal of the government not being allowed to deny liberty to an innocent citizen. Michigan has no interest in depriving an innocent person of their liberty. Mich. Const.1963, Art. 1.

In this case, Petitioner fairly presented the substance of his claim that trial counsel was ineffective for failing to question Michael Barmore regarding his description of the man wearing the Georgetown jacket in his motion for relief from judgment and related appeals. Petitioner claimed that trial counsel failed to conduct pre-trial interviews of the prosecution's witnesses and failed to cross-examine the child witnesses concerning their descriptions of the men seen fleeing the scene of the crime. These allegations sufficiently put the state courts on notice of the substance of Petitioner's ineffective assistance claims. Accordingly, this Court concludes that Petitioner has satisfied the exhaustion requirement with respect to this habeas claim.

As to trial counsel's failure to present evidence that Petitioner did not attend Cody High School, Petitioner's Exh. 1, the record reflects that Petitioner did not raise this particular claim of attorney error in the state courts. Thus, Petitioner has arguably failed to exhaust this issue.

Generally, a federal district court should dismiss a "mixed" habeas petition, that is, one containing both exhausted and unexhausted claims, "leaving the prisoner with the choice of returning to state court to exhaust his claims or amending and resubmitting the habeas petition to present only exhausted claims to the district court." *Rose v. Lundy,* 455 U.S. 509, 510, 522, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *Rust,* 17 F.3d at 160. While the exhaustion requirement is strictly enforced, it is not a jurisdictional prerequisite for bringing a habeas petition. *Granberry v. Greer,* 481 U.S. 129, 134–35, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987); *Pillette v. Foltz,* 824 F.2d 494, 496 (6th Cir.1987). For example, an unexhausted claim may be addressed if pursuit of a state court remedy would be futile, *Witzke v. Withrow,* 702 F.Supp. 1338, 1348 (W.D.Mich.1988), or if the unexhausted claim is meritless such that addressing it would be efficient and not offend federal-state comity. *Norris v. Schotten,* 146 F.3d 314 (6th Cir.1998); *Prather v. Rees,* 822 F.2d 1418, 1422 (6th Cir.1987).

Having considered the matter, this Court concludes that exhaustion of the Cody High School issue would be futile given that the Michigan appellate courts refused to address the other ineffective assistance claims that Petitioner raised in his motion for relief from judgment based upon his failure to comply with MCR 6.508(D). Moreover, the Court finds that this claim is without merit given that Marilyn Pryor testified that she knew Petitioner from the neighborhood and had seen him with her nieces. The fact that she may have been mistaken about where Petitioner went to high school, while relevant for impeachment, was not critical to her testimony. Further, Ms. Pryor admitted that she could not positively identify Petitioner as one of the people she saw running down her street on the morning of the murders. Thus, even assuming that counsel was deficient for not raising the Cody High School issue, it cannot be said that his failure to do so prejudiced Petitioner under the standard of *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), *infra.*[6] Further, Petitioner conceded at the evidentiary hearing that if this issue were found to be unexhausted, he would withdraw this claim.

Therefore, the exhaustion requirements have been met.

### C. *Procedural Default*

Respondent also contends that Petitioner's habeas claims are barred by pro-

6. It should also be noted that while this Court concludes that Petitioner was denied the effective assistance of counsel, it does not rely upon the Cody High School issue in granting the petition on such a basis.

cedural default. Habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *Wainwright v. Sykes,* 433 U.S. 72, 84–86, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Couch v. Jabe,* 951 F.2d 94, 96 (6th Cir. 1991). In *Wainwright,* the United States Supreme Court explained that a petitioner's procedural default in the state courts will preclude federal habeas review if the last state court rendering a judgment in the case rested its judgment on the procedural default. 433 U.S. at 85, 97 S.Ct. 2497.

In such a case, a federal court must determine not only whether a petitioner has failed to comply with state procedures, but also whether the state court relied on the procedural default or, alternatively, chose to waive the procedural bar. "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed,* 489 U.S. 255, 263–64, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). The last *explained* state court judgment should be used to make this determination. *Ylst v. Nunnemaker,* 501 U.S. 797, 803–05, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991). If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id.*

Here, the Recorder's Court for the City of Detroit denied Petitioner's motion for relief from judgment under MCR 6.508(D),[7] because Petitioner's ineffective assistance of trial counsel and insufficiency of the evidence claims were previously raised and decided against Petitioner on direct appeal and because the other claims could have been raised on direct appeal and Petitioner failed to establish cause and prejudice for his failure to do so. Both the Michigan Court of Appeals and the Michigan Supreme Court denied Petitioner's applications for leave to appeal the trial court's denial of his motion for relief from judgment based upon his failure to comply with MCR 6.508(D).

Respondent's procedural default argument cannot be accepted by this Court, however, in light of *Rogers v. Howes,* 144 F.3d 990 (6th Cir.1998). In that case, a Michigan prisoner was convicted of first-degree murder in 1965, but did not directly appeal his conviction. In 1991, he filed a motion for relief from judgment in the Wayne County Circuit Court pursuant to MCR 6.500, seeking appointment of appellate counsel. That motion was denied and not appealed. In 1992, the prisoner filed a second motion for relief from judgment with the trial court asserting several claims of error. The trial court denied the motion based upon procedural default—the prisoner's failure to raise his claims on direct appeal. In 1994, the prisoner filed a petition for a writ of habeas corpus with this Court raising the same claims raised in his second motion for relief from judgment. The District Court dismissed the case, finding that the petitioner had procedurally defaulted his claims in state court under MCR 6.508(D)(3) so as to bar federal habeas review. *Id.* at 991–92.

7. MCR 6.508(D) provides, in relevant part:

The defendant has the burden of establishing entitlement to the relief requested. The court may not grant relief to the defendant if the motion

(1) seeks relief from a judgment of conviction and sentence that still is subject to challenge on appeal pursuant to subchapter 7.200 or subchapter 7.300.

(2) alleges grounds for relief which were decided against the defendant in a prior appeal or proceeding under this subchapter, unless the defendant establishes that a retroactive change in the law has undermined the prior decision

(3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates

(a) good cause for the failure to raise such grounds on appeal or in the prior motion, and

(b) actual prejudice from the alleged irregularity....

On appeal, the United States Court of Appeals for the Sixth Circuit disagreed, because it refused to apply MCR 6.508(D)(3), which became effective in October of 1989, retroactively. In reaching this decision, the Sixth Circuit observed that, because the petitioner's first motion was merely a request for counsel, his second motion was his only actual motion for relief from judgment. Consequently, the procedural default involved the petitioner's failure to raise his claims on direct review (in 1965) rather than his failure to raise them in his first motion for relief from judgment (in 1991). *Id.* at 993, n. 3. The Sixth Circuit held that MCR 6.508(D)(3) was not a firmly established and regularly followed rule of the Michigan courts at the time of the petitioner's 1965 conviction and thus concluded that MCR 6.508(D)(3) was not an adequate and independent state procedural rule which barred review of the petitioner's habeas claims. *Id.* at 993–94.

Based upon *Rogers,* this Court concludes that MCR 6.508(D) was not a regularly followed procedural rule at the time of Petitioner's 1986 convictions and his direct appeals, which were concluded in 1988. Petitioner is therefore not procedurally barred from bringing his habeas claims in federal court.

Further, even if this Court were to find that Petitioner had procedurally defaulted his claims, the Court would not find the default a bar to federal habeas review. A state prisoner who fails to comply with a state's procedural rules does not waive the right to federal habeas review, if he can show cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or can show that a fundamental miscarriage of justice has occurred. *Coleman v. Thompson,* 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Gravley v. Mills,* 87 F.3d 779, 784–85 (6th Cir.1996).

In this case, Petitioner contends that any procedural default should be excused by the ineffective assistance of appellate counsel. Ineffective assistance of counsel may constitute cause for procedural default. *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Ratliff v. United States,* 999 F.2d 1023, 1026 (6th Cir.1993) (ineffective assistance of counsel constitutes cause under cause and prejudice standard for reviewing claims first presented in post-conviction proceedings). As discussed more fully below, Petitioner has shown that appellate counsel was ineffective for failing to present his habeas claims, particularly those concerning the ineffective assistance of trial counsel, on direct appeal. Petitioner has thus established cause to excuse the failure to raise his habeas claims on direct appeal.

Petitioner has also demonstrated actual prejudice. As discussed in detail below, Petitioner's ineffective assistance of trial counsel claims are meritorious, as are his ineffective assistance of appellate counsel claims. Moreover, the state courts refused to address several claims contained in Petitioner's motion for relief from judgment based upon his failure to raise those claims on direct appeal. Additionally, given this Court's determination, *infra,* that there was insufficient evidence to support Petitioner's convictions, Petitioner has shown that a fundamental miscarriage of justice has occurred. He has also set forth a credible claim of actual innocence. Petitioner's claims are thus not barred by procedural default—and the Court will address the merits of those claims.

### D. *Laches*

Respondent argues that, because Mr Daggs had no independent recollection of Petitioner's case, the State is prejudiced. Respondent asserts that this loss of independent recollection was caused by Petitioner sitting on his rights.[8] Respondent

8. Respondent does not speculate how Mr. Matthews knew or would know his counsel would forget about his case. Rather, Mr. Matthews testified he began to act after he learned to read and discovered what information was in the police statements. It took him

proposes that Petitioner should be precluded "from profiting to the detriment of another by his own delay in enforcing his rights." *Moore v. Smith,* 694 F.2d 115, 117 (6th Cir.1982).

28 U.S.C. § 2254, Rule 9(a) does allow the government to show that it has been unduly prejudiced by a delayed petition:

> A petition may be dismissed if it appears that the state of which the respondent is an officer has been prejudiced in its ability to respond to the petition by delay in its filing unless the petitioner shows that it is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred.

28 U.S.C. § 2254, Rule 9(a).

The Sixth Circuit has adopted a two prong test to analyze when a District Court, in its discretion, may dismiss a petition based on a petitioner's failure to promptly assert all his claims.

> A more proper interpretation of Rule 9(a), consistent with the Suspension Clause, is that rather than imposing a statute of limitations, the Rule invokes the equitable doctrine of laches. As applied here, the doctrine posits a two-pronged test. **First, the state must appear to have been prejudiced in its ability to respond to petitioner's claims.** Second, the petitioner must be given the opportunity to meet or rebut the apparent prejudice to the state, or to show that whatever prejudice the state has suffered would not have been avoided had the petition been filed earlier.

*Davis v. Adult Parole Authority,* 610 F.2d 410, 414 (6th Cir.1979). (Emphasis added).

The Sixth Circuit has recently held that laches can apply to habeas corpus case. *Carson v. Burke,* 178 F.3d 434 (6th Cir. 1999). Yet in approving the denial of habeas corpus based on laches in *Carson v. Burke,* the Sixth Circuit noted:

> The court took judicial notice that the trial judge in the underlying case is deceased, the prosecutor who tried the case has left public service, and the defense attorney's location is unknown. From these undisputed facts, the court concluded that Carson's delay in bringing this petition had prejudiced the government, and that Carson has not established that a miscarriage of justice occurred in his case or that he is innocent in fact.

*Id.* at 436.

The government does not, and can not, assert that it is similarly prejudiced by the time lapse in this case. Unlike *Carson,* the trial judge is still a sitting judge in Wayne County Circuit Court. The trial prosecutor still works as assistant prosecutor of Wayne County. The Respondent did not feel the need to call either of these persons as witnesses. Trial counsel, of course, did testify at the evidentiary hearing; but his lapse of memory cannot be attributed to Petitioner.

Respondent argues that Mr Daggs had no recollection of the case because he destroyed Mr. Matthews' file a few years ago citing storage costs. As discussed *supra,* Mr. Daggs' lack of recollection was due to his documented lack of preparation. Mr. Daggs admitted that he had received the trial transcript 10 to 12 days prior to the evidentiary but he had not taken any time to review the trial which occurred almost 14 years ago. If Mr. Daggs had reviewed the transcript, he could have recalled the trial, but this Court doubts that he could formulate an excuse for not asserting any rebuttal or alibi defense. In addition, as to the issue of sufficiency to the evidence, the record speaks for itself. That record was and is available. Hence, Respondent cannot satisfy the first prong of the *Davis* test. Further, Petitioner has shown that a miscarriage of justice occurred in his case or that he is innocent in fact.

years to struggle through the state review system.

### E. *Insufficiency of Evidence*

Mr. Matthews claims that he is entitled to habeas relief because there was insufficient evidence presented at trial to convict him of the charged offenses. In *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the Supreme Court established that a federal court's review of a sufficiency of the evidence claim must focus on whether:

> after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Id.* at 319, 99 S.Ct. 2781; *see also Warren,* 161 F.3d at 360; *DeLisle v. Rivers,* 161 F.3d 370, 389 (6th Cir.1998). Because a claim of insufficiency of the evidence presents a mixed question of law and fact, *Huynh v. King,* 95 F.3d 1052, 1059 (11th Cir.1996); *Maes v. Thomas,* 46 F.3d 979, 988 (10th Cir.1995); *Whaley v. Thompson,* 22 F.Supp.2d 1146, 1166 (D.Or.1998), this Court must determine whether the state court's application of the *Jackson* standard was reasonable. *Nevers,* 169 F.3d at 360.

Under Michigan law, the elements of felony murder are: (1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result [i.e., malice], (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in [the statute]. *People v. Carines,* 460 Mich. 750, 597 N.W.2d 130, 136 (Mich. 1999) (citing *People v. Turner,* 213 Mich. App. 558, 566, 540 N.W.2d 728 (Mich.Ct. App.1995)). The facts and circumstances of the killing may give rise to an inference of malice. *Id.* Malice may be inferred from evidence that the defendant intentionally set in motion a force likely to cause death or great bodily harm, including evidence that the defendant used a deadly weapon. *Id.*

In concluding that sufficient evidence was presented to support Petitioner's convictions, the Michigan Court of Appeals stated:

> In the instant case defendant was charged with first-degree murder, which includes murder which is committed during the perpetration of larceny. Larceny is stealing the property of another. In order to have murder, there must also be malice. Malice is the intent to kill, actual or implied. There is no doubt that Robert Williams, Bruce Baxter, and Marilyn Baxter were shot with guns and died. The crime scene clearly showed there was a larceny, based on the missing jewelry and the ransacked condition of the home. **Furthermore, viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to conclude that defendant perpetrated the crimes. Defendant was placed one block away from the scene of the crime both before and after it occurred. Also, defendant, less than two weeks after the crimes, sold a unique ring that belonged to Bruce Baxter.** A rational trier of fact could have found beyond a reasonable doubt that these matters prove three counts of felony murder, and that defendant was involved in the perpetration of these offenses.

*People v. Lorenzo Matthews,* No. 195278 (Mich.Ct.App. Feb. 19, 1988) (citations omitted)(emphasis added).

Having considered the matter, this Court concludes that the Michigan Court of Appeals' determination that the facts established that Petitioner participated in the felony murders is unreasonable and so devoid of record support such that it is outside the universe of plausible, credible outcomes. The Court of Appeals relied on two facts in finding that there was sufficient evidence to support Petitioner's convictions[9]: (1) his presence near the

9. The trial court found that the case was "almost entirely circumstantial", yet Michigan law did not require eyewitnesses, fingerprints or even ballistic proof. The trial court relied on Ms. Pryor's testimony that she saw a side view of someone who "resembled defen-

crime scene at the time of the murders, and (2) his sale of Mr. Baxter's ring less than two weeks after the murders. These facts are simply not enough to establish Petitioner's guilt of the charged offenses.

Testimony that Petitioner was in the vicinity of the crime scene shortly before and after the murders, even if believed, is insufficient to establish guilt under Michigan law.

> Mere presence, even with knowledge that an offense is about to be committed or is being committed, is insufficient to establish that a defendant aided or assisted in the commission of a crime.

*People v. Norris,* 236 Mich.App. 411, 600 N.W.2d 658, 663 (1999) (citing *People v. Wilson,* 196 Mich.App. 604, 614, 493 N.W.2d 471 (Mich.Ct.App.1992)); *see also Fuller v. Anderson,* 662 F.2d 420, 424 (6th Cir.) *cert. denied* 455 U.S. 1028, 102 S.Ct. 1734, 72 L.Ed.2d 150 (1982) (C.J. Burger and J. O'Connor dissenting) (citing Michigan law and concluding that petitioner's presence near gate of home in which another boy threw a Molotov cocktail was insufficient to establish guilt of arson so as to support felony murder conviction).

Officer Reynolds' testimony that Petitioner was walking a block away from the Baxters' residence shortly before the murders was thus insufficient to establish Petitioner's guilt as a matter of Michigan law. Marilyn Pryor's testimony that she saw a man who looked like Petitioner running from the area afterward was similarly insufficient, particularly since Mrs. Pryor admitted that she could not positively identify Petitioner as the fleeing man. Further, none of the children who observed the three perpetrators running from the area, and who testified at trial, could identify Petitioner as one of those men. Moreover, Petitioner's presence in area was easily explained as it was undisputed that he lived in the neighborhood. Accordingly, it cannot be said that Petitioner's presence in the Baxters' neighborhood near the time of the murders established his guilt of the charged offenses beyond a reasonable doubt.

The fact that Petitioner sold Mr. Baxter's ring to a jeweler after the murders similarly does not establish beyond a reasonable doubt that he participated in the felony murders at issue. Although possession of stolen property shortly after a theft can support an inference that the possessor committed the theft under Michigan law, *see People v. Miller,* 141 Mich. App. 637, 640, 367 N.W.2d 892 (1985) (sale of stolen gold chains hours after murder is relevant since it has a tendency to implicate defendant in the crime), the inference should only be drawn when the possession is exclusive and recent. *See People v. Mosley,* 107 Mich.App. 393, 397, 309 N.W.2d 569 (1981) (possession of recently stolen property permits inference that possessor committed theft); *People v. Strawther,* 47 Mich.App. 504, 507, 209 N.W.2d 737 (Mich.Ct.App.1973). The strength of the inference of guilt is dependent upon the facts of the case and weakens with the lapse of time. *People v. Helcher,* 14 Mich.App. 386, 389, 165 N.W.2d 669 (1968) (citations omitted).

In this case, Petitioner's girlfriend, Rose Marie Marks, testified that Petitioner showed her a Mercedes Benz ring sometime between December 16 and December 18, 1985 and asked her for $700 that he had previously given her so that he could buy the ring. Ms. Marks did not know from whom Petitioner wanted to buy the

dant". Further, the court relied on the testimony that there was no sign of forced entry into the victims' home and defendant had been there two days prior. The court concluded that:

> This case then turns on the proposition that a person seen in the area just before the killings are by circumstantial evidence concluded to have occurred and seen running from the scene with at least one other person who—with two other persons, one of whom is carrying a weapon and a—and who within five days is in possession of the spoils of such killings, is shown to have been a participant.

7/15/86 Trial Tr., p. 16. The trial court also gave some weight to the Georgetown jacket.

ring. Jeweler Bobby Berry testified that Petitioner sold him a Mercedes Benz ring a week or so before Christmas in 1985 in exchange for $750 and a gold rope chain. No witnesses testified how or from whom Petitioner obtained the ring. The testimony at trial therefore only established that Petitioner had possession of a Mercedes Benz ring, similar to one owned by Mr. Baxter, several days after the murders were committed. In the course of several days, however, a piece of stolen jewelry can exchange hands several times. Under such circumstances, Petitioner's possession of the ring is not sufficient evidence to establish guilt of the felony murders beyond a reasonable doubt.

Further, the only other fact relied upon by the Michigan Court of Appeals in finding that there was sufficient evidence of Petitioner's guilt of the felony murders was Petitioner's presence in the neighborhood on the morning of their commission. As noted, however, Petitioner's mere presence in his own neighborhood is insufficient to prove his involvement in the murders. The Court of Appeals' inference that Petitioner committed the felony murders because he possessed Mr. Baxter's ring more than several days after their commission was unreasonable given the lack of other facts and circumstances linking Petitioner to those murders.

Finally, this Court is troubled by the Michigan Court of Appeals' reliance on the fact that Petitioner presented "no theory of innocence at trial or on appeal" in denying Petitioner's insufficient evidence claim. *People v. Lorenzo Matthews*, No. 95278, *4 (Mich.Ct.App. Feb. 19, 1988).[10] It is well-established that the prosecution in a criminal trial bears the burden of proving the defendant's guilt beyond a reasonable doubt and that the defendant is not required to prove his innocence. *See, e.g., Patterson v. New York*, 432 U.S. 197, 215, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977) (noting that the "State must prove every ingredient of an offense beyond a reasonable doubt, and that it may not shift the burden of proof to the defendant by presuming that ingredient upon proof of the other elements of the offense"); *Estelle v. Williams*, 425 U.S. 501, 503, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976) ("presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice"). Although the prosecution is not required to disprove every plausible theory of innocence to establish a defendant's guilt of a criminal offense, a presiding court cannot rely upon the defendant's failure to present evidence of innocence to establish his guilt of a criminal offense beyond a reasonable doubt.

Accordingly, based upon the evidence presented at trial, or, more precisely, the lack thereof, this Court concludes that the Michigan Court of Appeals' determination that a rational trier of fact could have found the elements of felony murder beyond a reasonable doubt based upon Petitioner's presence in the neighborhood and his sale of the Mercedes Benz ring was unreasonable. Petitioner is therefore entitled to habeas relief on his insufficiency of evidence claim. *See* also *Evans–Smith v. Taylor*, 19 F.3d 899 (4th Cir.), cert. denied, 513 U.S. 919, 115 S.Ct. 298, 130 L.Ed.2d 211 (1994).

### F. *Ineffective Assistance of Trial Counsel*

Petitioner claims that he is entitled to habeas relief because trial counsel, Leroy Daggs, was ineffective. Specifically, Petitioner claims that trial counsel failed to effectively cross-examine witnesses, failed to investigate and call an exculpatory witness, and failed to call alibi witnesses or present a defense theory.

In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court set forth a two-pronged test for determining wheth-

10. In rendering its guilty verdict, the trial court also found "no inconsistent circumstances relating to the defendant's participation." 7/15/86 Trial Tr., p. 12.

er a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. 466 U.S. at 687, 104 S.Ct. 2052. Second, the petitioner must establish that the deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690, 104 S.Ct. 2052. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689, 104 S.Ct. 2052. The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690, 104 S.Ct. 2052.

To satisfy the prejudice prong under *Strickland,* a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* In *Lockhart v. Fretwell,* 506 U.S. 364, 369–70, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), the United States Supreme Court observed that "an analysis focusing solely on outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable is defective." The United States Court of Appeals for the Sixth Circuit has thus concluded that a reviewing court should focus on whether counsel's alleged errors "have undermined the reliability of and confidence in the result." *McQueen v. Scroggy,* 99 F.3d 1302, 1311 (6th Cir.1996), *cert. denied* 521 U.S. 1131, 117 S.Ct. 2536, 138 L.Ed.2d 1035 (1997). "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id.* at 1311–12 (quoting *Strickland,* 466 U.S. at 686, 104 S.Ct. 2052).

1. *Deficient Performance*

Having carefully reviewed the record, this Court concludes that trial counsel's performance was deficient, because counsel failed to properly investigate and present a defense to the charged offenses at trial. Specifically, trial counsel failed to cross-examine the child witnesses who observed the three men fleeing the vicinity of the crime, failed to investigate and waived Deon Corbett as a witness, and failed to call potential alibi witnesses or present a defense theory.

a. *Failure to Cross–Examine Child Witnesses*

Trial counsel's performance can be deemed deficient based upon the failure to properly cross-examine prosecution witnesses. *See, e.g., Groseclose v. Bell,* 130 F.3d 1161, 1169 (6th Cir.1997) (finding counsel deficient, in part, because he failed to cross-examine more than half of the prosecution's witnesses); *Jemison v. Foltz,* 672 F.Supp. 1002, 1008 (E.D.Mich.1987) (Gilmore, J.) (finding the same counsel deficient, in part, for conducting a highly limited and ineffectual cross-examination of the state's only witness).

In this case, the critical issue at trial was the identification of Petitioner as one of the perpetrators of the charged offenses. Six witnesses, ages 8 through 12, testified that they heard gunshots while walking to school on December 12, 1985 and saw three males running in the neighborhood one or two blocks from the Baxters' residence. None of the children who testified could identify the three males. Four of them stated that one of the fleeing males wore a Georgetown jacket. Terrance Barmore and Jovan Willis described the Georgetown jacket as gray

in color, and Emmanuel Jones and Deangelo Williams described the Georgetown jacket as gray and blue. The prosecution presented a mug shot of Petitioner wearing a blue Georgetown jacket with gray lettering, which was admitted into evidence over defense objection. Trial counsel, however, did not cross-examine or recall any of the child witnesses to determine the exact color of the Georgetown jacket or attempt to resolve the discrepancies in their descriptions. Additionally, although Terrance Barmore testified that one of the fleeing men wore a grey Georgetown jacket, he described the jacket as silver in color with black letters in a pre-trial statement to police. Trial counsel never questioned Terrance Barmore to elicit a more specific description of the Georgetown jacket, nor did he introduce the police report into evidence. Trial counsel did not discuss the differences in the witnesses' descriptions during closing arguments.

Trial counsel similarly failed to elicit testimony from the child witnesses regarding the physical size of the three fleeing men. The record reflects that Petitioner is between 6'3" and 6'5" tall. Upon questioning from the trial judge, Jovan Willis described the fleeing males as older than himself and stated that two were the size of men and one was the size of a teenager. None of the other child witnesses offered testimony about the size of the fleeing males. In a pre-trial statement to police, however, Michael Barmore described one of the fleeing men as a "B/M 19, 5'8", dk skin, short hair, red jacket w/orange sleeves, blue jean, armed w/a handgun." He then described a second man as a "B/M 19, shorter than # 1, dk skin, ??? hair—wrg Grey Georgetown jkt." Trial counsel, however, did not cross-examine Michael Barmore about his prior descriptions of the three men, nor introduce the police report into evidence. In fact, trial counsel did not elicit testimony from any of the child witnesses about the respective heights of the fleeing men. Given the lack of physical evidence linking Petitioner to the charged offenses and the importance of the identification testimony, counsel's failure to cross-examine the child witnesses about their descriptions of the fleeing men is inexcusable and cannot be deemed sound trial strategy. *See Strickland,* 466 U.S. at 690–91, 104 S.Ct. 2052 (trial strategy must be reasonable); *Beasley v. United States,* 491 F.2d 687, 696 (6th Cir.1974) (holding that it is a violation of the Sixth Amendment for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence); *Jones v. Wood,* 114 F.3d 1002, 1010–11 (9th Cir.1997) ("Even if [the attorney's] decision could be considered one of strategy, that does not render it immune from attack—it must be a reasonable strategy.").

Respondent argued that since counsel argued to the trial court in closing argument, the discrepancy in the description as to height; the error is harmless. However, it is basic that the court sitting as fact finder may not consider matters in closing argument not supported by evidence presented at trial [11].

The Court thus concludes that counsel was deficient for failing to cross-examine those witnesses at trial.

b. *Waiver of Deon Corbett as a Witness*

Trial counsel's performance may also be deemed deficient for the failure to investigate and present witnesses who may testify in a manner favorable to the defendant. *See Workman v. Tate,* 957 F.2d 1339, 1345 (6th Cir.1992) (finding counsel deficient for failing to interview and call

11. Michigan Standard Criminal Jury Instructions provides:

Considering Only Evidence/ What Evidence Is

When it is time for you to decide the case, you are allowed to consider the evidence that was admitted in the case. Evidence included only the sworn testimony of witnesses, the exhibits admitted into evidence, and anything else I tell you to consider as evidence.

CJI2d 2.5

two witnesses who were with defendant at time of his arrest for felonious assault and having a weapon while under a disability); *accord Hart v. Gomez,* 174 F.3d 1067, 1070 (9th Cir.1999) (finding counsel deficient for failing to investigate and introduce records that corroborated defense witness testimony); *Holsomback v. White,* 133 F.3d 1382, 1388 (11th Cir.1998) (finding counsel deficient for failing to contact physicians regarding lack of medical evidence in sexual abuse case); *see also Tucker v. Prelesnik,* 181 F.3d 747, 756 (6th Cir.1999) (finding counsel deficient for proceeding unprepared and failing to obtain complaining witness's medical records to use for impeachment at trial on assault charge).

In this case, trial counsel waived the presentation of Deon Corbett as a witness during the course of trial. Deon Corbett was another child who heard gunshots and observed people running from a house on Westwood Street, the location of the Baxters' residence, on December 12, 1985. In his signed affidavit, Deon Corbett states that he was questioned by police about what he saw the day of the shootings and was asked to appear in court in July, 1986. When he arrived at court, police showed him some photographs, including one of Petitioner, and asked him whether any of the people pictured were the same people he saw on the day of the shootings. He responded that they were not the same people. If called to testify, Deon Corbett would state that he saw the faces and clothing of the people running from the house on Westwood Street and that Petitioner was not one of those individuals. *Id.*

Deon Corbett was scheduled to appear as a prosecution witness at Petitioner's trial. The record indicates that an off-the-record discussion was held regarding the appearance of Corbett and that trial counsel agreed to waive his appearance. In consenting to the endorsement of Corbett as a witness at the start of trial, however, counsel admitted that he had not interviewed him. Trial counsel's failure to interview Deon Corbett, particularly before waiving him as a witness, was negligent and professionally irresponsible. At the very least, trial counsel knew that Corbett had observed the men fleeing the crime scene. Counsel, however, did not interview him, nor require that he appear at trial despite the potentially relevant testimony he could provide. "When counsel fails to investigate and interview promising witnesses, and therefore 'has no reason to believe that they would not be valuable in securing [defendant's] release,' counsel's inaction constitutes negligence, not trial strategy." *Workman,* 957 F.2d at 1345 (citations omitted). The fact that Deon Corbett would have testified that he saw the fleeing men and that Petitioner was not one of them magnifies the error of counsel's ways. Trial counsel was certainly deficient for failing to investigate Deon Corbett and for waiving his appearance at trial absent such investigation.

c. *Failure to Present Alibi Witnesses*

Trial counsel's performance may be deemed deficient for failing to investigate and present possible alibi witnesses. *Blackburn v. Foltz,* 828 F.2d 1177, 1183 (6th Cir.1987) (counsel was deficient for failing to investigate a known and potentially important alibi witness); *Jemison,* 672 F.Supp. at 1008 (counsel was deficient, in part, for failing to interview potentially effective alibi witness); *accord Brown v. Myers,* 137 F.3d 1154, 1158 (9th Cir.1998) (finding counsel deficient for failing to investigate and call possible alibi witnesses); *Grooms v. Solem,* 923 F.2d 88, 90 (8th Cir.1991) (same). Trial counsel's performance may also be deemed deficient when counsel relies solely upon the weaknesses in the prosecution's case and fails to present a defense theory. *See, e.g., Harris v. Reed,* 894 F.2d 871, 878–79 (7th Cir.1990) (counsel's reliance upon weakness of prosecution's case and failure to present defense theory was ineffective); *United States ex rel. Cosey v. Wolff,* 727 F.2d 656 (7th Cir.1984) (counsel's out-of-hand rejection of potential witnesses and decision not to call them because prosecu-

tion's case was weak fell below minimum standards of professional competence).

As stated at the evidentiary hearing, Mr. Matthews' mother, his sister, and Sandra Elliot volunteered to testify at his trial. According to their testimony, Petitioner's mother and sister would have each testified that Petitioner left his house walking alone with his dog around 8:10 a.m. on December 12, 1985[12]. Each of these witnesses spoke with trial counsel, but were not asked to testify. Trial counsel was also aware of Ms. Elliot's proposed testimony stating that Mr. Matthews arrived at her home with the dog about 8:30 a.m. that morning.

Trial counsel, however, did not request that any of these potential alibi witnesses testify at Petitioner's trial. Rather, he relied solely on the weaknesses of the prosecution's case and failed to present these witnesses or any others in support of a theory of innocence. While counsel's decision to challenge the sufficiency of the evidence was entirely reasonable, such a tactic did not foreclose the presentation of evidence in support of Petitioner's own defense. Trial counsel's decision not to present any alibi witnesses or otherwise establish a theory of defense falls outside the wide range of professionally competent assistance. Counsel's belated effort to challenge the time when the shootings occurred as a means of showing that Petitioner could not have committed the murders was unreasonable given that the witnesses' testimony clearly established that the shootings occurred between 8:20 a.m. and 8:35 a.m. Moreover, it was never established that Bruce Baxter had to work on December 12, 1985 or that he had to leave between 7:30 a.m. and 8:00 a.m. that particular day.

Counsel erred when he decided to rest solely on the weakness of the prosecution's case. His decision not to present alibi witnesses or a plausible theory of defense, particularly after being encouraged to do so by the trial court, fell below the standard of reasonably competent representation. Moreover, it appears that counsel's decision to proceed in such a manner was made without thoroughly reviewing the police reports and without interviewing many of the relevant witnesses. Knowing when to stop is sometimes difficult, but deciding not to start presenting a defense is indefensible.[13] This Court thus concludes that trial counsel was deficient for failing to call potential alibi witnesses or present a viable theory of defense.

2. *Prejudice*

This Court further concludes that Mr. Matthews was prejudiced by counsel's deficient performance. As noted by the trial court, the evidence linking Petitioner to the robbery and murders at the Baxters' residence was "almost entirely circumstantial." 7/15/86 Trial Tr., p. 4. A critical issue at trial was the identification of Petitioner near the crime scene on the morning of December 12, 1985. Trial counsel's failure to cross-examine the child witnesses about their conflicting descriptions of the Georgetown jacket worn by one of the males fleeing the scene and to inquire about the size of that person was prejudicial. Terrance Barmore and another boy testified that the Georgetown jacket was gray and two other boys testified that it was gray and blue. Had counsel questioned Terrance Barmore, however, he could have elicited a more specific description of the jacket. Although Terrance Barmore testified at trial that the jacket was gray, in his statement to police on the day of the incident, he described the jacket as gray with black letters. The trial court relied in part upon the Georgetown jacket

12. Although she did not testify at the evidentiary hearing, Earthena Kenney was also at the residence that morning and claims she would have corroborated Mrs. Matthews and Monica Wimbush if she had been called at trial.

13. *Id.* Counsel has a documented history of failure to protect his client's rights. See note 5, *supra*.

in finding Petitioner guilty of the charged offenses. Had trial counsel introduced evidence that the fleeing man's Georgetown jacket was different in color than that worn by Petitioner in the mug shot, the trial court may have accorded little or no evidentiary weight to the fact that Petitioner owned a blue Georgetown jacket 11 months before the murders.

Similarly, had counsel questioned Michael Barmore and brought out the fact that he described the man wearing the Georgetown jacket as being shorter than 5'8" in his initial police statement, the trial court may have reasonably doubted Petitioner's involvement in the crime since Petitioner is approximately 6'5" tall. This Court thus concludes that counsel's failure to cross-examine the child witnesses has undermined confidence in the outcome of Petitioner's trial.

This Court further concludes that counsel's failure to investigate and present Deon Corbett as a witness was highly prejudicial to Petitioner's case. Officer McReynolds' testimony established that Petitioner was in the vicinity of the Baxters' residence shortly before gunshots were heard in the area. None of the child witnesses who testified could identify the men whom they saw fleeing the scene. Adult Marilyn Pryor testified that she thought one of those men running down her street resembled Petitioner, but admitted that she only glanced at them and could not positively identify Petitioner. The trial court relied upon Mrs. Pryor's testimony in finding Petitioner guilty of the charged offenses. However, had Deon Corbett been called as a witness, he would have refuted that testimony by stating that he saw the faces and clothing of the three fleeing men and that none of those men were Mr. Matthews. Such testimony, if believed, would have affected the outcome of Mr. Matthews' trial. Trial counsel's failure to interview Deon Corbett and his waiver of Corbett as a witness has undermined the Court's confidence in the outcome of Petitioner's trial. This is particularly so since none of the witnesses who saw the men fleeing the crime scene could positively identify Petitioner.

Trial counsel's failure to call Mr. Matthews' proposed alibi witnesses or to present a plausible theory of defense at trial also was prejudicial. Had trial counsel presented the testimony of the alibi witnesses, the trial court would have had an alternative explanation for Petitioner's presence near the Baxters' residence, i.e., that he lived in the neighborhood and walked alone to his brother's home. If believed, such testimony would have affected the trial's outcome. Moreover, counsel's failure to present a reasonable defense theory left the trial court and the Michigan Court of Appeals with little need to question the circumstantial evidence and little reason to doubt Mr. Matthews' involvement in the charged offenses. The trial court specifically found "no inconsistent circumstances relating to the defendant's participation." 7/15/86 Trial Tr., p. 12. Similarly, in ruling on Petitioner's insufficient evidence claim, the Michigan Court of Appeals noted that "defendant here has offered no theory of innocence at trial or on appeal." *People v. Lorenzo Matthews,* No. 95278, *4 (Mich.Ct.App. Feb. 19, 1988). Counsel's failure to call alibi witnesses or present a theory of defense has undermined confidence in the outcome of Petitioner's trial.

Lastly, even if it could be said that counsel's performance errors considered individually did not sufficiently prejudice Petitioner, the errors taken as a whole warrant habeas relief. A federal court may look to the cumulative effect of trial court errors to determine whether a petitioner has been denied fundamental fairness. *Cooper v. Sowders,* 837 F.2d 284, 286 (6th Cir.1988); *Walker v. Engle,* 703 F.2d 959, 968 (6th Cir.1983); *see also Moore v. Reynolds,* 153 F.3d 1086, 1113 (10th Cir.1998) (cumulative-error analysis applies where there are two or more actual errors; it does not apply to the cumulative effect of non-errors), *cert. denied* 526 U.S. 1025, 119 S.Ct. 1266, 143 L.Ed.2d 362

(1999). Trial counsel's cumulative errors can render the result of a defendant's trial unreliable. *Moore v. Johnson,* 194 F.3d 586, 622 (5th Cir.1999); *Williams v. Washington,* 59 F.3d 673, 682 (7th Cir.1995) ("a petitioner may demonstrate that the cumulative effect of counsel's individual acts or omissions was [prejudicial]"); *Rodriguez v. Hoke,* 928 F.2d 534, 538 (2d Cir.1991) (noting that a claim of ineffective assistance of counsel can turn on the cumulative effect of all of counsel's actions).

In this case, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. Counsel's errors, either individually or cumulatively, "have undermined the reliability of and confidence in the result." *McQueen,* 99 F.3d at 1311. Had trial counsel presented testimony that the Georgetown jacket was gray with dark letters rather than blue and that the person wearing the jacket was shorter than 5'8", called Deon Corbett to testify that he saw the three fleeing men and Petitioner was not one of the them, and offered alibi witnesses as a theory of defense, the trial court reasonably may not have relied upon the Georgetown jacket or Marilyn Pryor's tentative identification as evidence of Petitioner's guilt. Additionally, the trial court would have had reason to believe that Petitioner was walking to his brother's house when seen by Officer McReynolds before the shootings. Left only with the fact that Petitioner knew Bruce Baxter, had been in his home, and had sold a ring belonging to him a number of days after the murders, there is a reasonable probability that the trial court would have determined that the prosecution failed to establish Petitioner's guilt beyond a reasonable doubt. Further, the trial court may have reasonably believed that Petitioner had a credible claim of innocence to the charged offenses. Accordingly, this Court concludes that trial counsel's failure to cross-examine the child witnesses, his waiver of Deon Corbett as a witness, and his failure to present alibi witnesses or a plausible theory of defense have undermined the reliability of Petitioner's trial and this Court's confidence in the result. Petitioner is thus entitled to habeas relief on his claims of ineffective assistance of trial counsel.

### G. *Admission of Other Crimes Evidence*

Petitioner also claims that he is entitled to habeas relief because the trial court improperly admitted the mug shot of him wearing the blue Georgetown jacket, which was taken 11 months prior to the murders. Petitioner claims that admission of the photograph violated his due process rights, because the photograph indicated that he had been involved in another criminal matter.

It is well-established that alleged trial court errors in the application of state procedure or evidentiary law, particularly regarding the admissibility of evidence, are generally not cognizable as grounds for federal habeas relief. *Pulley v. Harris,* 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984); *Serra v. Michigan Dep't of Corrections,* 4 F.3d 1348, 1354 (6th Cir.1993); *see also Olsen v. McFaul,* 843 F.2d 918, 933 (6th Cir.1988) (such claims are almost always rejected as grounds for granting a writ of habeas corpus). Instead, questions concerning the admissibility of evidence, as well as its probative or prejudicial value, are properly left to the sound discretion of the trial court. *Oliphant v. Koehler,* 594 F.2d 547, 555 (6th Cir.1979). However, where the admission of the disputed evidence rendered the trial "so fundamentally unfair as to constitute a denial of federal rights" it may provide grounds for granting a writ of habeas corpus. *Clemmons v. Sowders,* 34 F.3d 352, 356 (6th Cir.1994).

Mr. Matthews alleges that his constitutional rights were violated because the trial court admitted a mug shot of him wearing a Georgetown jacket. The Michigan Court of Appeals considered this issue as a matter of state evidentiary law, even though raised as a due process violation.

It concluded that no error occurred, because the prosecution offered the picture to show that Petitioner owned a Georgetown jacket and witnesses testified that one of the men fleeing the scene wore a similar jacket. *People v. Lorenzo Matthews,* No. 95278, *2–3 (Mich.Ct.App. Feb. 19, 1988).

This Court disagrees and instead finds that the admission of the mug shot violated due process. Under Michigan law, references to a defendant's prior incarceration are, unless specifically ruled otherwise, generally inadmissible. *People v. McPherson,* 21 Mich.App. 385, 398, 175 N.W.2d 828 (1970) (evidence of former convictions or confinement is inadmissible unless it is material and relevant to the issue being tried); *see also People v. McGee,* 90 Mich.App. 115, 116–17, 282 N.W.2d 250 (1979). When a defendant has not taken the stand, testimony concerning his mug shot or admission of the photograph itself impermissibly places his criminal record before the fact finder. *People v. Embry,* 68 Mich.App. 667, 670, 243 N.W.2d 711 (1976) (citing *People v. Heller,* 47 Mich. App. 408, 209 N.W.2d 439 (1973)).

In this case, Petitioner did not testify at trial and the mug shot clearly informed the trial court that Petitioner had, at a minimum, been arrested in another criminal matter. Further, the mug shot of Petitioner wearing the Georgetown jacket was not relevant or material given that the photograph was taken 11 months prior to the murders. Further, the Georgetown jacket worn by Petitioner in the photograph differed in color from the descriptions of the perpetrator's jacket given by several of the boys, who witnessed three men fleeing the scene. Finally, Georgetown jackets were particularly popular at the time of the murders due to the success and popularity of the Georgetown University's basketball team in the mid–1980s.

Accordingly, the Court finds that admission of the mug shot denied due process of law. More importantly, the Court finds that the erroneous admission of the mug shot was not harmless given the paucity of evidence linking Petitioner to the felony murders. Most importantly, the fact that the trial court relied in part upon the Georgetown jacket in convicting Petitioner clearly demonstrates the prejudice. The Court thus concludes that admission of the mug shot rendered Petitioner's trial fundamentally unfair and so prejudiced him as to constitute a violation of due process. Mr. Matthews is, thus, also entitled to habeas relief on this claim.

### H. *Prosecutorial Misconduct*

Petitioner next claims that he is entitled to habeas relief because the prosecutor argued facts of flight not supported by the evidence during opening arguments. The United States Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). Factors to be considered in weighing the extent of a prosecutor's misconduct are:

> the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury, and the strength of the competent proof to establish the guilt of the accused.

*Pritchett v. Pitcher,* 117 F.3d 959, 964 (6th Cir.1997), *cert. denied,* 522 U.S. 1001, 118 S.Ct. 572, 139 L.Ed.2d 411 (1997) (quoting *Serra v. Michigan Dept. of Corrections,* 4 F.3d 1348, 1355–56 (6th Cir.1993)).

> [T]o constitute the denial of a fair trial, prosecutorial misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the tri-

al,' or 'so gross as probably to prejudice the defendant.'

*Id.* (citations omitted).

In this case, the prosecutor's comments did not rise to the level of constitutionally impermissible misconduct. First, although the prosecutor never established that Petitioner went to Milwaukee, Wisconsin on the day of the murder nor established exactly when Petitioner left town following the murders, the prosecutor did establish that Petitioner was in Illinois on December 14, 1985, two days after the murders. Thus, the prosecutor's comments on Petitioner's flight were not entirely misleading. The prosecutor's comment about Petitioner asking a witness to lie for him about when he left town is more troubling as no such evidence was admitted during the course of trial. However, while the comment was misleading, it was isolated in nature and was not likely to prejudice the trial judge. As noted, a trial judge acting as the finder of fact is presumed to have followed the law and relied only upon the evidence presented in rendering a verdict. The trial court's factual findings do not indicate that the judge relied upon the prosecutor's unproven comments in rendering a decision. Petitioner has not shown that the prosecutor's remarks denied him a fundamentally fair trial and is thus not entitled to habeas relief on this claim.

### I. *Ineffective Assistance of Appellate Counsel*

Lastly, Petitioner claims that he was denied the effective assistance of appellate counsel because counsel failed to raise several of the foregoing issues on direct appeal. The right to the effective assistance of counsel includes the right to the effective assistance of appellate counsel. *Evitts v. Lucey,* 469 U.S. 387, 396, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985); *Carpenter v. Mohr,* 163 F.3d 938, 946 (6th Cir.1998). To establish the ineffective assistance of appellate counsel, it must be shown that counsel's performance was deficient and that the deficient performance was prejudicial. *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052; *Ratliff v. United States,* 999 F.2d 1023, 1026 (6th Cir.1993). A criminal defendant has no constitutional right to demand that appellate counsel raise every possible colorable issue on appeal. *Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). " '[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray,* 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986) (quoting *Jones,* 463 U.S. at 751–52, 103 S.Ct. 3308).

Although the Sixth Amendment right to counsel does not require an appellate attorney to raise every non-frivolous issue on appeal, an attorney who has presented strong but unsuccessful claims on appeal may nonetheless deliver a deficient performance and prejudice a defendant by omitting a "dead bang winner" on appeal, *i.e.,* an issue obvious from the trial record which would have resulted in reversal on appeal. *Clemmons v. Delo,* 124 F.3d 944, 954 (8th Cir.1997); *United States v. Cook,* 45 F.3d 388, 395 (10th Cir.1995); *see also Banks v. Reynolds,* 54 F.3d 1508, 1515 (10th Cir.1995) (failure to raise "dead-bang winner" claim on appeal constitutes ineffective assistance of appellate counsel even though counsel may have raised other strong but ultimately unsuccessful claims); *Matire v. Wainwright,* 811 F.2d 1430, 1438 (11th Cir.1987) (appellate counsel may be ineffective where the trial error is obvious from the record and "must have leaped out upon even a casual reading of the transcript"). A habeas petitioner may establish ineffective assistance of appellate counsel by showing that counsel ignored a significant and obvious issue while pursuing weaker claims. *Carpenter,* 163 F.3d 938 at 947.

In this case, appellate counsel raised a claim of ineffective assistance of trial counsel on direct appeal, but only challenged trial counsel's failure to object to the testimony of the child witnesses and

a rebuttal witness. Appellate counsel failed to raise ineffective assistance claims concerning trial counsel's failure to investigate witnesses before trial, trial counsel's failure to cross-examine the child witnesses, trial counsel's waiver of Deon Corbett as a witness, and trial counsel's failure to present alibi witnesses and/or a plausible theory of defense. Appellate counsel was deficient for failing to pursue these serious claims of ineffective assistance of trial counsel on direct appeal. Furthermore, it is clear that Petitioner was prejudiced by appellate counsel's performance given this Court's determination that Petitioner's claims of ineffective assistance of trial counsel are meritorious and the fact that the Michigan courts refused to hear these claims in Petitioner's post-conviction proceedings due to appellate counsel's failure to raise them on direct appeal. Thus, this Court concludes that Petitioner was also denied the effective assistance of appellate counsel and is entitled to habeas relief on such a basis.

## V. *Conclusion*

For the reasons stated, this Court concludes that Petitioner is entitled to federal habeas relief based upon insufficient evidence, ineffective assistance of trial and appellate counsel and the unconstitutional admission of the mug shot, but it not entitled to habeas relief on his prosecutorial misconduct.

Accordingly,

**IT IS ORDERED** that the petition for a writ of habeas corpus is **GRANTED.** The State must release Petitioner from custody immediately upon receipt of this order. Should the State appeal this decision to the United States Court of Appeals for the Sixth Circuit, this order is stayed pending the disposition of that appeal.